J-S74044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NASEER JOHNSON | : | |
| | : | |
| Appellant | : | No. 2410 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 21, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0000776-2016

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                  Filed: April 30, 2021

Appellant, Naseer Johnson, appeals from the judgment of sentence of 13 to 38 years' incarceration entered in the Court of Common Pleas of Montgomery County after he pleaded guilty to one count each of Rape, Aggravated Assault, and Aggravated Indecent Assault.[1]  Herein, he challenges his lifetime registration as a Sexually Violent Predator ("SVP") under the Sexual Offenders Registration and Notification Act ("SORNA II"), Subchapter H, 42 Pa.C.S.A. §§ 9799.10-42, the discretionary aspects of his standard range guideline sentence, and the imposition of costs at sentencing.  After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 PA.C.S.A. §§ 3121(a)(1), 2702(a)(1), and 3125(a)(2), respectively.

The Affidavit of Probable Cause included within the Police Criminal Complaint filed in the present matter supplied the facts to which Appellant stipulated to at the time of his guilty plea and sentencing. Specifically, the Affidavit alleged the following:

On December 23, 2015 at 5:01 p.m., the Upper Dublin Township Police Department was dispatched to "The Villa," located at 701 Bethlehem Pike in the Ambler section of Upper Dublin Township, for a completed sexual assault. The victim in this investigation . . . has been employed as a clinical intern at "The Villa" since August 31, 2015. [She] reported to Upper Dublin Police Officers at the scene that she was forcefully raped by a resident of "The Villa" named Naseer Johnson (date of birth 11/08/1997).

[The victim] reported that she was strangled by Naseer Johnson to the point that she lost control of her bladder and urinated on the cafeteria floor[, a report corroborated by a discovery of a puddle of urine at the location]. [She reported] that the sexual assault occurred in the cafeteria of "The Villa" following a counseling session she had with Naseer Johnson.

[She] was transported to Abington Memorial Hospital by Ambler Ambulance at 5:25 p.m., where she was interviewed and examined by Karen Dougherty, a Sexual Assault Nurse Examiner. Nurse Dougherty's examination revealed that [she] displayed tenderness and pain to her head, mouth and jaw, and upper extremities as well as erythema on her cervix consistent with recent sexual intercourse.

[A] formal, written statement [was taken from the victim] following her examination by Nurse Dougherty. [The victim] reported that she is currently employed as a clinical intern at "The Villa" and has been so employed since August 31, 2015. She reported that on December 23, 2015, she went to St. Dominick's, a housing unit on the grounds of "The Villa", to meet a resident for a counseling session. [She] reported that the resident she was supposed to counsel was sleeping, so she asked the residential counselor if any of his residents wanted to talk.

[The victim] reported that while she was speaking with the residential counselor, Naseer Johnson was present and was asked by the residential counselor if he wanted to speak with [the victim]. [The victim] reported that Naseer Johnson said he felt like talking and she took him to her office for a counseling session.

[The victim] reported that prior to the evening of December 23, 2015, she never counseled or spoke to Naseer Johnson. [She] reported that the counseling session with Naseer Johnson lasted approximately thirty minutes and was atypical from counseling sessions she has had with other residents of "The Villa." [She] reported that the session began normally in that Naseer Johnson was telling her about his life and why he couldn't go home for Christmas, but quickly changed when Johnson began asking [her] questions about her internship and personal questions such as where she attended school.

[The victim] reported that when she completed the counseling session with Naseer Johnson, they left her office and he asked if he could see Carol, an employee at "The Villa", because she had his Christmas gifts. [The victim] reported that she and Naseer Johnson then walked to Carol's office but she was not there. [The victim] reported that Naseer Johnson then kept asking her if anyone was in the building to which she replied, "I guess not."

[The victim] reported that Naseer Johnson then asked her if he could go to the bathroom, to which [she replied] that he could use the bathroom back at his unit [instead]. [She] reported that Naseer Johnson then walked to the bathroom and tried opening the door, but it was locked. At this point, [ ] she told Naseer Johnson that she had to walk him back to his unit, and she began walking with him toward one of the stairwells.

[The victim] reported that Naseer Johnson directed her toward another stairwell, stating that the flight of stairs was a quicker way back to his unit. [She] reported that as she began to walk up the stairs, Naseer Johnson pulled her off of the stairs by grabbing onto the hood of her jacket and strangling her neck while standing behind her.

[The victim] reported that after Johnson pulled her off the stairs, he began striking her repeatedly to the back of her head. [She] made several attempts to strike, pull away, and run from

Naseer Johnson, but she was unable to escape his grasp as he grabbed her and repeatedly banged her head against the cafeteria wall. [The victim] reported that Naseer Johnson then took her to the ground forcefully and pulled her pants and underwear down to her ankles. [She] reported that Naseer Johnson, now on top of her, began strangling her and said, "If you scream, I'm going to kill you".

[The victim] reported that while Naseer Johnson strangled her she urinated on the cafeteria floor. [She] reported that after Naseer Johnson threatened to kill her she stopped resisting. [She] reported that she stopped resisting because she feared that Naseer Johnson would kill her.

[The victim] reported that Johnson proceeded to take his pants down and forcefully inserted his penis inside of [her] vagina. [She] reported that during the sexual assault, Naseer Johnson lifted her shirt and bra and kissed her breasts and mouth. [She] reported that when she tried to move her head or arms during the sexual assault, Naseer Johnson forcefully pinned her arms to the cafeteria floor.

[The victim] reported that Naseer Johnson forcefully penetrated her vagina with his penis for approximately fifteen to twenty minutes. [She] reported that Naseer Johnson may have ejaculated inside of her vagina. [She] reported that following the rape, she asked Naseer Johnson if he trusted her, [in an attempt to save her own life], because she didn't know if he was going to kill her after he raped her. [She] reported that at no time prior to or during the previously described sexual assault did she consent to sexual activity of any kind with Naseer Johnson.

Following [the] interview with [the victim], [investigating officers] interviewed and took a formal written statement from Naseer Johnson at the Upper Dublin Township Police Department. Prior to this interview and formal statement, Naseer Johnson was read and explained his Constitutional Rights as they are written on the Upper Dublin Township Police Department Constitutional Rights form. Naseer Johnson waived his Constitutional Rights and provided us with a formal written statement.

Naseer Johnson's statement corroborated [the victim's] statement. Naseer Johnson admitted he strangled, repeatedly grabbed, struck, and banged the victim's head onto the cafeteria

floor. Naseer Johnson reported that he forcefully stuck his penis inside of [the victim's] vagina knowing that he did not have consent to do so. Naseer Johnson reported that prior to him raping [the victim], he strangled her and said, "If you scream, I'm going to kill you."

Affidavit of Probable Cause, 12/24/2015, at 1-3.

On August 3, 2016, Appellant pleaded guilty to the above-mentioned charges, as well as to simple assault in an unrelated case.[2] At Appellant's June 21, 2018, sentencing hearing, the court considered the defense argument for leniency, which centered on Appellant's history as a two year-old victim of sexual abuse, his removal from the family home and placement in various foster homes over many years, and the alleged deprivation of love, guidance, and support that flowed from the absence of a "true family" in his life. N.T. at 23.

Also offered was a more specific account of Appellant's mental health history that included a childhood diagnosis of bipolar disorder, anger issues, and depression. *Id*. Though he received treatment for these conditions, the defense argued that Appellant's illicit drug and alcohol abuse starting at age 11 undermined the efficacy of the treatment and contributed to his suicide attempt at the age of 13. *Id*.

_____

[2] At the same hearings, Appellant also entered an open guilty plea and received sentence, respectively, in a separate case docketed with the lower court at 2307-16 involving one count of simple assault stemming from his unrelated attack against a different female victim in the women's bathroom in a public library. His appeal from the judgment of sentence entered in that companion case is presently docketed at No. 522 EDA 2019, wherein he advances a challenge to the imposition of costs at sentencing identical to the third issue he raises in the case *sub judice*.

From that time, counsel maintained, Appellant continued to abuse alcohol, which, combined with his mental illness, had created multiple behavioral issues that prevented him from completing high school. Counsel maintained it was this history that led to the offense Appellant committed in the present matter. N.T. at 24.

At the outset of the court's sentencing remarks, it recognized both Appellant's pre-sentencing allocution and his acceptance of responsibility during the guilty plea colloquy, and it therefore noted "[s]o, I have factored that allocution into the court's decision." N.T. at 57. The court then placed on the record the reasons for its sentence, which it acknowledged must include a review of the Sexual Offender Risk Assessment, the presentence investigation report, victim impact statements, sentencing guidelines, Appellant's mitigating circumstances, and the facts that were read into the record at Appellant's guilty plea.

Specifically, the court shared its observations, as follows:

> It is difficult to fathom a crime more replete with terror and depravity than what the defendant did. And again, this is referring to the rape of [the clinical intern]. The context again . . . on this fateful Christmas Eve of 2015 when all that [she] was doing was being an intern in a field that she was hoping that she would be able to seek her profession in.
>
> And essentially what is so chilling about it is essentially going into this was appears to be unaccompanied and simply asking if anybody needed to talk. I can't imagine anything more startling than what happened.
> . . .

[I]t's chilling what occurred to [the clinical intern]. She simply wanted to help. Again, this defendant's background, his upbringing, factors indicate that he didn't have much of a chance, but it appears that he was appropriately placed because of that background.

. . .

And this poor woman waged in to one of the most horrific experiences that I think anybody could ever imagine. And there's no more or less.

Christmas Eve, he brutally raped her, pure and simple. Brutally raped her, he committed an aggravated indecent assault, another form of sexual assault that he perpetrated upon her. And then, to even make this more horrific, either was attempting to kill her, but in the form of her assault, strangulation and the injuries that he visited upon her only underscore the absolute danger this defendant presents.

. . .

And again, you say he's 18 and he never had a chance. This court has to weigh that into the rehabilitative needs of the defendant. And I have, but I can't get the scene of violence, sexual violence that he perpetrated upon this woman who will never be the same.

. . .

But this defendant was barely an adult and he has been in a system and he is clearly marginalized as a result of things that happened to him in his childhood that should have never happened to anyone. And resources and love, commitment, they should have been available to him [but] were not. And in the end, at the age of 18, a potentially violent predator was amongst us and [the clinical intern] never saw it coming.

So, I have to sentence the crime along with the defendant. And the crime, you know, that this defendant committed, again, is the most serious, I think, in the Crimes Code. So [the sentence] is consistent with protection of the public.

I don't know, you know, the future of this defendant. One can only hope that he will – it's sad that he has to grow into a man in the prison system, but [sentencing] consistent with the protection of the public is of paramount importance.

- 7 -

And again, [the victim in the prior assault occurring in the library bathroom] – I don't know – by fate didn't suffer more serious injuries. The victim impact statement lent weight as to the violence that she felt in that moment of her life back in the public library, but words can't begin to describe the terror that [the clinical intern in the present case] must have felt on Christmas Eve of 2015. So, the weight is almost totally to the victim, the impact of the life of the victim.

I have factored in the rehabilitative needs of the defendant. And again, I don't know what a state correctional system can offer, but the sentence, and concededly so, is weighted with Factors 1 and 2 heavily.

I've attempted to factor in there [ ] knowing that this defendant, sadly, in his world never had a chance. Never had a chance. And hopefully the growth he has begun since he has been in the county correctional system over 18 or 19 months has started that process.

So, this is a sentence that is weighted heavily taking into consideration the guidelines. I've decided not to put it into the aggravated range solely because this defendant did take accountability and responsibility, but they will be consecutive sentences because I need to weigh consistent with protection of the public and the impact that this has had upon the victims and the community in general.

He is high risk. I can't say that there's any higher risk than the defendant based upon his Sexual Offender Risk Assessment. Therefore, any supervision should be consistent with that.

So total confinement is the sentence of this court. And total confinement is necessary because, based upon everything that this court has placed upon the record, there is an absolute undue risk this defendant would commit another crime. There is no doubt about that.

Again, I am factoring in – I am not factoring in the Sexually Violent Predator Assessment because I'm not permitted to do so in terms of sentencing, but I am factoring in the Sexual Offender Risk Assessment. This defendant is an undue risk of committing such a crime if he was not subject to total confinement.

He is in need of correctional treatment because that is the only place in which we can confine someone that committed that type of crime this defendant did commit.

N.T. at 57-64.

Informed by the Sex Offenders Assessment Board's ("SOAB") report, to which Appellant stipulated, the court found Appellant to be a Sexual Violent Predator ("SVP"), and it participated in the Commonwealth's advisement of Appellant as to his consequent registration requirements. The court then imposed an aggregate sentence of 13 to 38 years' incarceration, which comprised consecutive terms of five and one-half to 15 years for rape, four and one-half years for aggravated assault, and three to eight years for aggravated indecent assault. N.T. at 64-66. Subsequently, the court denied Appellant's motion for reconsideration of sentence. This timely appeal followed.

Appellant presents the following questions for our consideration:

1. Was Mr. Johnson illegally sentenced to lifetime registration requirements because the newly enacted Act 29 ("SORNA II") is unconstitutional and the lifetime registration exceeds the maximum term of his sentence?

2. Did the sentencing court abuse its discretion by sentencing Mr. Johnson, who was just 18 years old at the time of the offense, to three consecutive sentences with an aggregate maximum of up to thirty-eight (38) years in prison where Mr. Johnson's violent behavior is informed by his experiences as a victim of child sexual abuse; he is affected by multiple disabilities; he was severely under-nurtured from birth with no meaningful family support throughout his childhood; and he was essentially raised by the system and will now graduate to an adulthood of decades of incarceration in punitive settings that are not resourced to meet his rehabilitative needs?

3. Did the sentencing court illegally impose costs on Mr. Johnson, who is indigent, without making a determination regarding his ability to pay costs?

Brief for Appellant, at 5.

In Appellant's first issue, he contends that the lifetime registration requirements of SORNA II, Subchapter H,[3] applicable to him are punitive in effect and, consequently, unconstitutionally subject him to punishment that extends beyond the maximum term of his sentence.  We note that counsel for Appellant prepared this argument prior to the decision of the Pennsylvania Supreme Court in ***Butler*** **II**.

In ***Butler II***, the Supreme Court reversed this Court's decision[4] that the SVP designation procedure in question was unconstitutional.  Specifically,

---

[3] "Subchapter H is based on the original SORNA statute and is applicable to offenders, ..., who committed their offenses after the December 20, 2012 effective of SORNA."  ***Commonwealth v. Butler***, 226 A.3d 972, 981 n.11 (Pa. 2020) ("***Butler*** **II**"); ***See*** 42 Pa.C.S.A. § 9799.10-41.   SORNA was enacted in 2011 and became effective on December 20, 2012.  Through Acts 10 and 29 of 2018, the General Assembly split Subchapter H of SORNA into a Revised Subchapter H and Subchapter I.  Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. ***See*** 42 Pa.C.S.A. §§ 9799.51-9799.75.   Revised Subchapter H, which applies to offenders such as Appellant who committed an offense on or after December 20, 2012, contains stricter requirements than Subchapter I. ***See*** 42 Pa.C.S.A. §§ 9799.10-9799.42.   Thus, Appellant became subject to registration under Subchapter H of the Pennsylvania Sentencing Code pursuant to Act 29.

[4] ***Commonwealth v. Butler***, 173 A.3d 1212, 1215 (Pa. Super. 2017) (holding challenges to sexual offender registration obligations under ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) implicate legality of sentence), *reversed*, 226 A.3d 972 (Pa. 2020) ("***Butler II***").

the High Court held that SORNA II, Subsection H's registration, notification, and counseling ("RNC") requirements as applied to SVPs did not constitute constitutional criminal punishment:

> Although we recognize the RNC requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. Under the circumstances, and also because we do not find the RNC requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the RNC requirements do not constitute criminal punishment.

*Id*. at 992-993 (internal citation omitted). *See also Commonwealth v. Torsilieri*, 232 A.3d 567, 572 n.2 (Pa. 2020) (distinguishing the *Butler II* holding from the constitutional challenges to Subchapter H raised by appellant Torsilieri, noting, "as *Butler II* involves provisions related to the SVP designation process, it is not relevant to [appellant Torsilieri], who was not designated an SVP.").

Therefore, the entirety of Appellant's constitutional challenge is at odds with and, thus, nullified by *Butler II*. As such, it can afford him no relief.

In Appellant's second issue, he contends the court abused its sentencing discretion by failing to consider mitigating factors and imposing consecutive

sentences. Appellant thus challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted).

Here, Appellant filed a timely notice of appeal, preserved his issue in a post-sentence motion, and included a statement in his brief pursuant to Pa.R.A.P. 2119(f) ("Rule 2119(f) Statement"). The final requirement, whether the question raised by Appellant is a substantial question meriting our discretionary review, "must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Manivannan*, 186 A.3d at 489 (quotation marks and some citations omitted).

In his Rule 2119(f) Statement, Appellant contends that the trial court abused its discretion when it imposed standard-range guideline sentences by

failing to properly consider his mitigating circumstances and by ordering his sentences to run consecutively.

As to whether a challenge to consecutive sentences within the guideline ranges raises a substantial question, this Court has made the following observations: was discussed by this Court in:

> We consistently have recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. **See Commonwealth v. Caldwell**, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"), **appeal denied**, 633 Pa. 774, 126 A.3d 1282 (2015); **see also Commonwealth v. Ahmad**, 961 A.2d 884, 887 n.7 (Pa. Super. 2008); **Commonwealth v. Pass**, 914 A.2d 442, 446–47 (Pa. Super. 2006). Additionally, Appellant claims that the trial court failed to consider his mitigating circumstances, specifically his "advanced" age of over seventy years. Appellant's Brief at 50. In **Commonwealth v. Eline**, 940 A.2d 421 (Pa. Super. 2007), we concluded that an appellant's argument that "the trial court failed to give adequate consideration to [his] poor health and advanced age" in fashioning his sentence does not raise a substantial question. **Eline**, 940 A.2d at 435. In so concluding, we explained that "[t]his court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Id.** (citation omitted); **see Commonwealth v. Disalvo**, 70 A.3d 900 (Pa. Super. 2013) (citations omitted) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); **see also Commonwealth v. Berry**, 785 A.2d 994 (Pa. Super. 2001) (explaining allegation that sentencing court failed to consider certain mitigating factor generally does not raise a substantial question); **Commonwealth v. Cruz–Centeno**, 447 Pa.Super. 98, 668 A.2d 536, 545 (1995) ("[a]n allegation that a sentencing [judge] 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate,"), **appeal denied**, 544 Pa. 653, 676 A.2d 1195

- 13 -

(1996); ***Commonwealth v. Bershad***, 693 A.2d 1303, 1309 (Pa. Super. 1997) (finding absence of substantial question where appellant argued the trial court failed to adequately consider mitigating factors and to impose an individualized sentence). Consistent with the foregoing cases, we conclude that Appellant failed to raise a substantial question with respect to his excessiveness claim premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors.

***Commonwealth v. Radecki***, 180 A.3d 441, 468–69 (2018). ***See also***

***Commonwealth v. Caldwell***, 117 A.3d 763 (Pa. Super. 2015) (*en banc*) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.") (citations and internal quotation marks omitted).

Unlike the circumstances discussed in ***Radecki***, 180 A.3d at 469, and ***Caldwell***, 117 A.3d at 769, Appellant's Rule 2119(f) Statement claims neither that the length of his aggregate sentence was excessive given the criminal conduct involved, nor does he assert that the trial court's application of the guidelines was somehow unreasonable. Indeed, in the case *sub judice*, Appellant's criminal conduct was not only most violent, but also the second brutal, ambush-style sexual attack that he carried out in a relatively short span of time. Accordingly, Appellant's assertion that the trial court abused its discretion by sentencing him in the standard range of the sentencing guidelines for all charges and by ordering his sentences to run consecutively does not raise a substantial question. ***Id.*** at 8.

The crux of Appellant's discretionary aspect challenge lies, instead, in his insistence that the trial court failed to consider mitigating evidence properly. We note that "[a]n allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Wellor*, 731 A.2d 152, 155 (Pa. Super. 1999) (reiterating allegation that sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise substantial question)).

An exceptional instance where this Court has identified a substantial question from an allegation that a trial court failed to consider adequately mitigating circumstances was in *Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc*), where the sentencing court sentenced in the aggravated range of the sentencing guidelines. This, however, is not the case in the current appeal. For this reason, Appellant's allegations in his Rule 2119(f) Statement concerning mitigating evidence do not raise a substantial question, either.[5]

_____

[5] Even if we were to identify a substantial question in Appellant's claim of insufficiently considered mitigating circumstances, we would find the claim belied by the record of the trial court's open court statement of reasons crediting Appellant's allocution, his expression of remorse, and the considerable hardships he endured throughout his childhood for its decision to downgrade what otherwise would have been an aggravated range sentence to a standard range sentence.

Consequently, none of Appellant's arguments in his Rule 2119(f) Statement raises a substantial question. For this reason, we conclude he has not preserved his challenge to the discretionary aspects of sentencing.

In Appellant's final issue, raised for the first time in this appeal, he posits that the court erroneously ordered Appellant to pay the costs of prosecution without first considering Appellant's ability to pay such costs. Because Appellant's claim challenges the sentencing court's authority to impose costs as part of its sentencing order, it implicates the legality of his sentence and represents a non-waivable claim. *See Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa. Super. 2019), *aff'd*, 243 A.3d 7 (Pa. 2020). "Our standard of review over such questions is *de novo* and our scope of review is plenary." *Commonwealth v. White*, 193 A.3d 977, 985 (Pa. Super. 2018) (citing *Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa. Super. 2014)).

The Judiciary Code requires a trial court to order a convicted defendant to pay costs pursuant to 42 Pa.C.S.A. § 9721(c.1), which provides:

> Mandatory payment of costs.—Notwithstanding the provisions of section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), **the court shall order the defendant to pay costs**. In the event the court fails to issue an order for costs pursuant to section 9728, **costs shall be imposed upon the defendant under this section**. **No court order shall be necessary for the defendant to incur liability for costs under this section**. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. 706(C) (relating to fines or costs).

42 Pa.C.S.A. § 9721(c.1) (emphasis added).

As this Court recently recognized in **Commonwealth v. Lopez**, 2021 PA Super 51 (filed March 23, 2021) (*en banc*), the Pennsylvania Rules of Criminal Procedure, Sentencing Code, and established decisional law confer upon a trial court discretion over whether to hold an ability-to-pay hearing at the time of sentencing.  Only before incarcerating a defendant for failing to pay the costs imposed must a court hold a hearing.  **See Lopez**, at **13-14 (explaining, "unless and until a defendant is in peril of going to prison for failing to pay the costs imposed on him. It is only at that point that the mandate for an ability-to-pay hearing arises").

Appellant is not facing incarceration for failing to pay the costs of prosecution imposed at his sentencing.  Thus, he was not entitled to an ability-to-pay hearing at that time, which renders meritless his claim that the trial court erred in failing to conduct such a hearing prior to imposing costs.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: _4/30/21_

- 17 -